**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO:**

Mansory Design & Holding GMBH, and
EMC of Miami, Corp d/b/a Limited Spec Automotive,

   Plaintiffs,

vs.

Jesse Frimpone a/k/a Jesse Frimpong,
305 Auto Customs Incorporated, and
Mehdi Mourtaj,

   Defendants.

_____/

## COMPLAINT

  Mansory Design & Holding GMBH ("Mansory Germany") and its authorized distributor and exclusive licensee of the "MANSORY" trademarks that are the subject of this action – namely, EMC of Miami, Corp d/b/a Limited Spec Automotive ("Mansory USA") (collectively, the "Plaintiffs"), hereby file this Complaint against Defendants, Jesse Frimpone a/k/a Jesse Frimpong ("Frimpone"), 305 Auto Customs Incorporated ("305 Auto") and Mehdi Mourtaj ("Mourtaj") (collectively, the "Defendants"), and allege as follows.

## INTRODUCTION

  1. Founded in 1989, Mansory Design & Holding GMBH ("Mansory Germany") is a luxury vehicle modification company which is known worldwide for its extensive customization of high-end vehicles, including specialized body kits (including bespoke carbon fiber kits), interior overhauls, performance tuning, and other parts and accessories.

  2. Mansory Germany's goods and services are performed on (or in connection with) some of the world's most prestigious vehicle manufacturers, including but not limited to, Rolls-

1

Royce, Lamborghini, Ferrari, Bugatti, Bentley, and Mercedes-Benz.

3.     305 Auto, which is owned and operated by Mourtaj, is a company headquartered in Davie, Florida that manufactures, advertises, offers for sale, installs, sells, and engages in other commercial activity in connection with counterfeit vehicle body kits, parts, accessories, and interior products that display the MANSORY Marks (defined below).

4.     Frimpone is a purported "social media influencer" who owns a Lamborghini Urus, and who conspired with 305 Auto in counterfeit trafficking, including but not limited to commercial activity in connection with the importation, acquiring, purchasing, advertising and promoting, installing, selling (at least as to 305 Auto's sale vis-à-vis the installation services), and other misconduct, which culminated in the Urus being "converted" into a "Mansory Urus" with counterfeit body kits, parts, and accessories which display (and intentionally infringe upon) the MANSORY Marks.  Frimpone now uses that vehicle to engage in commercial activity, including but not limited to, the sale or offering for sale of so-called "e-commerce educational courses and consultancy services."

5.     This action is brought to put a stop to the Defendants' willful infringement and unlawful use of the Mansory brand and the MANSORY Marks in violation of Plaintiffs' rights under federal and state law.

6.     Despite being notified, Defendants have been unwilling to permanently cease and desist from using the MANSORY Marks, further demonstrating the willfulness and egregiousness of their actions.

## **JURISDICTION**

7.     This is an action for injunctive and other relief under the Federal Trademark Act, 15 U.S.C. §1051, et seq. ("Lanham Act"), including but not limited to 15 U.S.C. § 1114 for

trademark counterfeiting, 15 U.S.C. § 1125(a) for trademark infringement, false designation of origin, false advertising, and related unfair competition.  Plaintiffs also assert claims in accordance with common law rights in the state of Florida for trademark infringement, false advertising, unfair competition, and other claims arising under state law.

8.      This Court has original jurisdiction over the subject matter of this suit because it arises under federal law, namely, the Trademark Act of 1946 (the Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338 (trademarks and unfair competition), 15 U.S.C. §1125(a)(1)(B) (false advertising), and 15 U.S.C. § 1125(a) (false designation of origin). This Court also has supplemental jurisdiction as set forth in 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

9.      Personal jurisdiction is proper over Defendants because 305 Auto is a Florida limited liability company registered in the State of Florida, and Mourtaj and Frimpone are residents of the State of Florida.

10.     Personal jurisdiction is also proper over Defendants because they have committed tortious acts within this State, and the Southern District of Florida, including the infringement set forth herein, within the meaning of Fla. Stat. §48.193(1)(a). This includes causing injury to the property of Mansory USA within this state, and the Southern District of Florida, namely the MANSORY Marks as set forth herein, arising out of acts or omissions by the Defendants while, at or about the time of the injury, the Defendants were engaged in solicitation or service activities within this State, and the Southern District of Florida, within the meaning of Fla. Stat. §48.193(1)(f)(1).

11.     Personal jurisdiction is also proper because, as shown below, Defendants: (a)

operate, conduct, engage in, or carry on a business or business venture in this State, and the Southern District of Florida, within the meaning of Fla. Stat. §48.193(1)(a); and (b) are engaged in substantial and not isolated activities within this State, and the Southern District of Florida, within the meaning of Fla. Stat. §48.193(2).

## VENUE

12.     Venue is proper under 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida, including the acts of infringement complained of herein against Defendants.

13.     Venue is also proper under 28 U.S.C. §1391(b) because Defendants market, advertise, and offer their goods and services in the Southern District of Florida, and otherwise do business in the Southern District of Florida.

14.     Venue is proper under 28 U.S.C. §1391(b) in that Defendants are subject to the Court's personal jurisdiction in the Southern District of Florida, as set forth above.

## THE PARTIES

15.     Mansory Germany is a Germany company with a principal place of business at Wunsiedler Straße 1, 95682 Brand, Germany.

16.     Mansory USA is a Florida corporation with a principal place of business at 8700 NW 7th Avenue, Miami, FL 33150.

17.     Defendant Frimpone is an individual who resides in Florida at the address 10961 SW 31 Street, Davie, Florida 33328.

18.     Defendant 305 Auto is a Florida corporation with a principal place of business at 5150 SW 48th Way, Suite 614 Davie, Florida 33314.

19.     Defendant Mourtaj is an individual who owns and/or manages 305 Auto and resides

in Florida at the address 5150 SW 48th Way, Suite 614 Davie, Florida 33314.  Defendant Mourtaj

is the owner, president, operator, and driving force behind 305 Auto and its operations (including

the infringement alleged herein), as shown below and throughout this Complaint.  Indeed,

Mourtaj's personal Instagram page discusses how he (individually and on behalf of 305 Auto),

directly participated in the "fully Mansory swap" (*i.e.* swapping out parts on the original Urus to

include the counterfeit Mansory kits, parts, and accessories), which was done for, and at the

direction of Frimpone (who owns and operates the Instagram handle @kxngjess):



20.     The unlawful acts of Defendant 305 Auto, as alleged below, were done with full

knowledge of Defendant Mourtaj, who is personally liable because he directed, controlled, ratified,

and participated in those unlawful acts, and was (and still is) the driving force behind those acts;

furthermore, Defendant Mourtaj directly profited from (and had a pecuniary interest) in the

unlawful acts alleged herein.

## GENERAL ALLEGATIONS

21.     Founded in 1989, Mansory Germany is a world-renowned luxury vehicle

modification company.

22.     Over the past 35 years, Mansory Germany has modified cars, SUVs, golf carts, motorcycles, planes, and marine vessels by some of the world's most prestigious brands, including but not limited to, Rolls-Royce, Lamborghini, Ferrari, Bugatti, Bentley, and Mercedes-Benz.

23.     Mansory Germany's modifications not only provide cosmetic enhancements, but also comprehensive transformations that include aerodynamics (including aerodynamic body kits crafted from ultra-light carbon fiber), engine tuning, lightweight materials, and opulent interiors.

24.     Mansory Germany also offers aluminum wheels (examples shown below) and engine performance enhancements:



25.     Mansory Germany's commitment to individuality and innovation also extends to vehicle interiors, offering a selection of premium leathers, Alcantara, carbon fibers, and wood veneers, as shown below:



26.     Vehicles modified by Mansory Germany (and also through its direct licensee, Mansory USA) stand as symbols of status, exclusivity, and unparalleled craftsmanship.

27.     Indeed, countless superstars, celebrities, and entertainment moguls have been featured in (and have purchased) Mansory-modified vehicles. Clients include Khloe Kardashian (with a modified Lamborghini Urus), DJ Tiesto (with a modified Rolls-Royce Cullinan), DJ Marshmellow (with a modified Rolls-Royce Phantom), and Rick Ross (with a modified Rolls Royce).

28.     Mansory Germany's elite reputation has garnered 3.7 million followers of its Instagram account (@mansory), as shown below:



Mansory Germany's Trademarks

29.     Mansory Germany is the owner of numerous trademarks in the United States and foreign countries.  Those United States federal trademark registrations and applications include, but are not limited to:

a.  U.S. Trademark Registration No. 3,534,246 for the incontestable mark ≡ MANSORY ≡ for use in connection with "Accessories and structural parts of automobiles, namely, front bumper, rear bumper, spoilers for vehicles, mirrors as vehicle parts, namely, rear view mirrors, radiator grille, fender, automobile hoods, running boards, wheel rims for automobiles, brake callipers, namely, brake discs, steering wheels, gear shifts, handbrake lever, automobile interior accessory, namely, durable and flexible wedge, which can be expanded or contracted, to fill gap between front seat and center console of an automobile preventing objects from dropping into gap, automotive interior trim, automotive interior panelling, custom leather interiors for vehicles, metal parts for vehicles, namely, automotive exterior and interior metal decorative and protective trim, plastic parts for vehicles, namely, automotive exterior and interior plastic extruded decorative and protective trim" in International Class 12;  and

b.  U.S. Trademark Serial No. 99/344,791 for the mark **MANSORY** for use in connection with "Electronic control systems for engines; Downloadable computer software and firmware for operating system programs; Downloadable software for connecting, operating, and managing networked maps for motor vehicle engines in the internet of things (IoT)" in International Class 9, "Vehicle wheel rims and structural parts therefor;

8

Metal parts for vehicles, namely, automotive exterior and interior metal decorative and protective trim; Plastic parts for vehicles, namely, automotive exterior and interior plastic extruded decorative and protective trim; Automotive interior trim; Automotive interior paneling; Automobile bumpers; Spoilers for automobiles; Fenders for land vehicles; Vehicle hood and fender louvers and vents; Vehicle running boards; Brake hardware for vehicles; Vehicle brake discs; Steering wheels for vehicles; Gear shifts; Handbrake knobs for vehicles; Automobile interior accessory, namely, durable and flexible wedge, which can be expanded or contracted, to fill gap between front seat and center console of an automobile preventing objects from dropping into gap; Radiator grills for vehicles; Auto aftermarket accessories, namely, vehicle custom grills; Automotive body kits comprising external structural parts of automobiles; License plate holders; Hub caps for wheels; Children's car seats; Automotive conversion kits comprised of front and rear bumpers, side skirts, spoilers, wheels, fenders, rear diffusers, rear wings, hoods, bonnets, rims, interior trims, engine upgrades, and exhaust systems to make structural changes to an automobile; Mirrors for vehicles, namely, rear view, side view, and vanity mirrors" in International Class 12, and "Custom painting of vehicles; Custom tuning of exterior, interior and mechanical parts of vehicles; Custom rebuilding of existing land vehicles and structural parts therefor; Custom installation of exterior, interior and mechanical parts of vehicles" in International Class 37.

(hereinafter, Registration No. 3534246 and Serial No. 99344791, along with all common law rights in the marks and variations thereof, are collectively referred to as the "MANSORY Marks"). Attached hereto as **Exhibit A** is the Registration Certificate for Registration No. 3534246.

30.     The MANSORY Marks have been in continuous use in United States commerce since at least 2004, and have earned an exemplary reputation in the industry among consumers.

31.     As the exclusive authorized distributor in the United States for Mansory Germany, Mansory USA is licensed to use the MANSORY Marks throughout the United States.

32.     Mansory USA owns and operates a website (www.mansoryusa.com, hereinafter referred to as the "Mansory USA Website") where clients can not only view current MANSORY inventory, but also virtually build a custom Mansory-modified vehicle, as shown below:

9



33.     In addition to its online presence, Mansory USA has a physical location (images of Mansory USA's dealership are shown below):



34.     Mansory USA's Instagram pages (@mansory.usa and @limitedspec) have amassed

over 600,000 followers.

35.     Plaintiffs' use of the MANSORY Marks in commerce pre-dates any date of first use that Defendants can rely upon, and Plaintiffs continue to advertise, market, offer for sale, and sell a variety of goods and services under the MANSORY Marks.

36.     Since long prior to the acts of Defendants complained of herein, Plaintiffs have expended money, time, and effort in advertising, promoting, marketing, and selling services and products bearing the MANSORY Marks.

37.     The MANSORY Marks have developed valuable goodwill among the consuming public through, *inter alia*, advertising efforts and expenditures, media coverage, and significant revenues. As a result of Plaintiffs' extensive and continuous use, the MANSORY Marks are extremely strong and have garnered widespread recognition with the consuming public.

38.     The MANSORY Marks are prominently displayed on and in connection with Mansory Germany's website (*i.e.,* https://www.mansory.com/), the Mansory USA Website, Mansory USA's dealership, the Plaintiffs' respective Instagram pages (among other channels), and the Plaintiffs' underlying goods and services.

39.     The MANSORY Marks are used in connection with advertising Plaintiffs' goods and services, and have, by actual usage, served to identify the Plaintiffs as the source of the goods and services.

40.     Long prior to any date upon which Defendants can rely, Plaintiffs adopted the MANSORY Marks, and those marks since their adoption have been continuously used in interstate (and foreign) commerce in connection with their goods and services, including vehicle body kits, parts, and accessories.

41.     Long prior to the acts of Defendants complained of herein, the MANSORY Marks

11

have acquired secondary meaning and significance in the minds of the purchasing public, as a result of Plaintiffs' goodwill and strong reputation, and long-term use and recognition of the MANSORY Marks as source identifiers for Plaintiffs' goods and services.

42.     The MANSORY Marks indicate the origin of Mansory Germany's goods and services (and in turn, Mansory Germany's exclusive licensee), and are relied upon and recognized by consumers and members of the trade, as a symbol of and assurance as to the quality, security, and efficiency of Plaintiffs' goods and services.

<u>The Unlawful Activities of Defendants 305 Auto and Mourtaj,<br>and Their Civil Conspiracy with Defendant Frimpone</u>

43.     Upon information and belief, 305 Auto (owned and/or managed by Mourtaj) is an automotive customization shop which, in addition to providing more routine services (*e.g.* window tint, vinyl wrap, ceramic coating, etc.), also manufacturers, acquires, traffics in, imports, advertises, offers for sale, and sells counterfeit automotive kits, parts, and accessories, and in connection with the sale to the end "customer," proceeds to install those parts on underlying vehicles.

44.     Images of the exterior of the 305 Auto body shop are shown below:



45.     Images of the interior of the 305 Auto body shop (as well as the final version of the

Counterfeit Mansory Urus at issue in this lawsuit) are shown below:



46.      Defendants 305 Auto and Mourtaj promote themselves as experts in automotive customization and body kit installation.

47.      As Defendant Mourtaj stated in one of his Instagram videos featuring and displaying the Counterfeit MANSORY Urus (the entirety of the statement is displayed below), Defendant Mourtaj and Defendant Frimpone "go way back" (*i.e.* they have known each other for a long time); additionally, Defendant Mourtaj stated that Defendant Frimpone is "a very special client."

48.      Accordingly, in late 2025, and unbeknownst to the Plaintiffs, all Defendants to this action conspired and agreed, expressly and/or tacitly, to a "Mansory conversion" of Defendant Frimpone's Lamborghini Urus, whereby counterfeit "Mansory" kits, parts, and accessories would be installed (all with the intent to infringe the MANSORY Marks). This constituted the initial formation and beginning operations of the conspiracy, followed by the wrongful conduct in furtherance of the conspiracy alleged herein, and also set forth immediately below.

49.      As part of and in furtherance of this conspiratorial scheme, and with knowledge of the Plaintiffs and the MANSORY Marks, Defendants all committed numerous over acts in

connection with modifying Defendant Frimpone's Lamborghini Urus into the Counterfeit MANSORY Urus.

50.    As part of and in furtherance of this conspiratorial scheme, Defendant Frimpone committed the overt acts of (a) soliciting, acquiring, importing (or causing to be imported), purchasing, and otherwise trafficking in counterfeit "Mansory" kits, parts, and accessories; and (b) paying monies to Defendants 305 Auto and Mourtaj for the installation of those counterfeit "Mansory" parts onto a Lamborghini Urus.

51.    As part of and in furtherance of this conspiratorial scheme, Defendants 305 Auto and Mourtaj committed the overt acts of (a) trafficking in the counterfeit "Mansory" kits, parts, and accessories, including the importation and installations of those kits, parts, and accessories on the subject Lamborghini Urus; (b) soliciting and receiving monies from their client (*i.e.*, Frimpone) for the installation of counterfeit "Mansory" kits, parts, and accessories onto the subject Lamborghini Urus.

52.    As shown below, this conspiracy was executed to completion, beginning with the initial stage of Defendant Frimpone surrendering his *existing and non-modified* Lamborghini Urus to Defendants 305 Auto and Mourtaj, with the intent and knowledge that Defendants 305 Auto and Mourtaj would install the counterfeit kits, parts, and accessories:



**Defendant Frimpone's *non-modified* Lamborghini Urus, Located at Defendant 305 Auto's Bodyshop**

53.     In furtherance of the conspiracy (and the underlying trademark counterfeiting and trademark infringement), Defendants 305 Auto and Mourtaj proceeded to – in Defendant Mourtaj's words: (a) "rip this bad boy part;" (b) "do a full Mansory swap;" (c) "take everything off;" (d) "rip this bad boy apart…and this thing is really in surgery."  The entirety of Defendant Mourtaj's statement is shown below, along with photographs of the "surgery:"

"What's going on y'all this is rap lord D [*i.e.* Defendant Mourtaj] here from [Defendant] 305 Auto Customs, and my guy [Defendant Frimpone] King Jess trusted us to bring his URUS in. ***We're doing a full Mansory kit Mansory Swap***. As you can see we're kind of like in the beginning stages getting stuff together, organizing everything, ***bumpers off, taking everything apart***. Come take a look man, come take a look. We also doing a full interior color change. We're gonna do it Tiffany Blue. As you can see, we already started.. ***ripping this bad boy apart***. ***This thing is really in surgery***, so. ***This type of work you can't trust everybody to do, but we're going to make sure to take care of this client. This a very special client we go way back so. Stay tuned for this project***. It's about to be crazy and I'm out.

 



54.     Once Defendants 305 Auto and Mourtaj took the Lamborghini Urus apart, they proceeded to – at the direction of Defendant Frimpone – lay out and organize all of the counterfeit "Mansory" kits, parts, and accessories that had been purchased in furtherance of the conspiratorial scheme, and in furtherance of the "Mansory swap:"

 

 

55.     After Defendants 305 Auto and Mourtaj had finalized the "Mansory swap," Defendants 305 Auto and Mourtaj contacted Defendant Frimpone to advise that his Counterfeit MANSORY Urus was ready for pickup at 305 Auto, where the "big reveal" occurred:



18



56.     Since that time, Defendant Frimpone has been advertising and promoting his Counterfeit MANSORY Urus — *post*-modification by Defendants 305 Auto and Mourtaj— on his social media platforms, as shown below in a post from April 20, 2026, which has obtained 93,200 "likes":



57.     Defendants all profited and benefited from the agreed-upon conspiratorial scheme.

58.     Side-by-side photographs comparing a Lamborghini Urus advertised for sale by Plaintiff Mansory USA and the Counterfeit MANSORY Urus owned by Defendant Frimpone are below:

| Plaintiff Mansory USA's Lamborghini Urus | Defendant Frimpone's Counterfeit MANSORY Urus |
|---|---|
|  | |



59.     Additional photographs of the Lamborghini Urus advertised for sale by Plaintiff Mansory USA are attached hereto as **Composite Exhibit B**.

60.     Defendants acted with full knowledge of this civil conspiracy.

61.     Long subsequent to Plaintiffs' adoption and use of the MANSORY Marks in commerce, Defendants 305 Auto and Mourtaj began adopting and using in commerce the exact same marks, MANSORY and ≡MANSORY≡ (the "Infringing Marks"), marks that are identical and confusingly similar to the MANSORY Marks, such that consumers are likely to confuse them.

62.     Long subsequent to Plaintiffs' adoption and use of the MANSORY Marks in commerce, Defendants 305 Auto and Mourtaj advertised, offered for sale, sold, and engaged in

other commercial activity in connection with competing, counterfeit goods and services under the Infringing Marks, and/or are using and otherwise misappropriating the MANSORY Marks to (among other things) cause confusion and divert customers away from Plaintiffs, and instead to the Defendants 305 Auto and Mourtaj.

63.     As detailed herein, Defendants 305 Auto and Mourtaj have advertised and used the Infringing Marks in connection with modified vehicles, including vehicle body kits, parts, accessories, and related goods and services, all designated with the Infringing Marks.

64.     Despite knowing full well of Plaintiffs and the MANSORY Marks, Defendants 305 Auto and Mourtaj have willfully committed acts of infringement by, among things, directly targeting (and otherwise conspiring with) end consumers, such as Frimpone, in connection with commercial activity, online advertising, and use of the Infringing Marks.

65.     For example, on their Instagram accounts, Defendants 305 Auto and Mourtaj have advertised, offered, and sold competing, counterfeit goods and services under the Infringing Marks, and/or are using and otherwise misappropriating the MANSORY Marks to, among other things, cause confusion and divert customers away from Plaintiffs, and instead to the Defendants 305 Auto and Mourtaj.

66.     Screenshots from Defendants' 305 Auto and Mourtaj Instagram accounts containing examples of such unlawful use and infringement of the MANSORY Marks on the Counterfeit MANSORY Urus are shown below:

22





67.    On their Instagram accounts, Defendants 305 Auto and Mourtaj are also utilizing the MANSORY Marks (*e.g.* using the hashtags #mansory and #mansoryurus) in connection with images of the same Counterfeit MANSORY Urus identified above:







68.     Other images containing examples of Defendants' 305 Auto and Mourtaj unlawful use and infringement of the MANSORY Marks on the Counterfeit MANSORY Urus are shown below:





69.     Images containing examples of Defendants' 305 Auto and Mourtaj unlawful use and infringement of the MANSORY Marks on *a different* Lamborghini Urus for a *different* client, specifically a social media "influencer" with the Instagram username @v12noah, are shown below:





70.     This unlawful conduct and willful infringement was intentionally executed in an effort to misappropriate Plaintiffs' goodwill, customers, and market share, and also to lure potential customers away from the Plaintiffs.

71.     Defendants 305 Auto and Mourtaj knew that this infringing conduct was unlawful. To be sure, Defendant Mourtag (Instagram handle @wraplord.dee) "follows" Mansory Germany on Instagram, and therefore was well aware of the MANSORY Marks (and the *authentic* goods and services provided by the Plaintiffs):



72.     The acts of the Defendants 305 Auto and Mourtaj have been willful, by virtue of at least: (a) their knowledge of Plaintiffs' rights in and to the MANSORY Marks; and (b) their conspiracy with Frimpone to engage in trademark counterfeiting and infringement of the MANSORY Marks as alleged herein.

73.     Defendants' 305 Auto and Mourtaj willful infringement and unlawful use of the Infringing Marks has continued in interstate commerce in the United States, including in the Southern District of Florida, in connection with automobiles that display the counterfeit and spurious Infringing Marks that are the subject of this action.

74.     Defendants 305 Auto's and Mourtaj's willful infringement and unlawful use of the MANSORY Marks has allowed Defendants 305 Auto and Mourtaj to profit off of the goodwill and reputation associated with the Plaintiffs and the MANSORY Marks.

75.     Defendants 305 Auto's and Mourtaj's willful infringement and unlawful use of the MANSORY Marks – including through the goods and services that they provide – falsely represents or suggests to consumers that they originate from Plaintiffs (when they do not); that there is a connection between Plaintiffs and Defendants 305 Auto and Mourtaj (when there is not); that Defendants 305 Auto and Mourtaj are authorized distributors for Mansory Germany (when they are not); and that Defendants 305 Auto and Mourtaj obtained rights to the MANSORY Marks as a result of a license (which they have not). All of the foregoing unlawful practices will cause or have caused consumer confusion, and have violated or eroded Plaintiffs' exclusive rights to use the MANSORY Marks. Such use is likely to cause confusion, to cause mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Defendants' 305 Auto and Mourtaj goods and services and to cause them to falsely believe that said goods and services are the goods and services of Plaintiffs, or are sponsored, licensed, associated, authorized, or approved by Plaintiffs, all to the detriment of Plaintiffs, the trade, and the public.

76.     In addition to the immediate confusion and damage to the Plaintiffs stemming from Defendants' 305 Auto and Mourtaj willful infringement and unlawful use of the MANSORY Marks, further damage is caused even if consumers ultimately realize that Defendants 305 Auto and Mourtaj are not affiliated with the Plaintiffs; by that time, consumers have already purchased Defendants' 305 Auto and Mourtaj inferior goods and services bearing the Infringing Marks at a substantially cheaper price (and of substantially inferior quality) than Plaintiffs' goods and services.

77.     Indeed, upon information and belief, Defendants 305 Auto and Mourtaj have advertised, offered for sale, imported, sold, and installed kits, parts, and accessories which display the Infringing Marks for a small fraction of, and substantially *below* the price of the Plaintiffs'

29

authentic goods and services bearing the MANSORY Marks.

78.     The goods and services offered by Defendants 305 Auto and Mourtaj under the Infringing Marks are of inferior quality compared to the Plaintiffs' genuine and high-quality goods and services, which in turn harms the Plaintiffs' brand and goodwill, as the Plaintiffs (and Mansory USA in particular) are not able to monitor, enforce, or maintain quality control standards on the counterfeit Mansory-branded goods.

79.     The use by the Defendants 305 Auto and Mourtaj of the MANSORY Marks in the manner described above tends to, and does, create the erroneous impression that inferior products emanate or originate from Mansory USA and/or Mansory Germany, and/or that said products/vehicles are authorized, sponsored, or approved by Mansory USA and/or Mansory Germany even though they are not.

80.     Consumer confusion is also likely to occur, if it has not already occurred, because the parties' advertising methods are either the same or highly similar, as Defendants 305 Auto and Mourtaj also promote their goods and services bearing the Infringing Marks online.

81.     The Infringing Marks are confusingly similar to the MANSORY Marks because, among other things: (a) the MANSORY Marks are strong, distinctive trademarks; (b) the Infringing Marks are identical to the MANSORY Marks, and the marks create the same overall impression, including with respect to the sound, appearance, and manner in which they are used; (c) the parties' goods and services are similar and highly related, including because they are of a kind that the public attributes to a single source; (d) the parties' sales channels, distribution, and customer bases are the same or highly similar; (e) the parties' advertising methods or channels are the same or highly similar, including because the parties use the same forums and media to advertise, leading to possible confusion; and (f) the Defendants 305 Auto and Mourtaj intended to

infringe on the MANSORY Marks, as Defendants 305 Auto and Mourtaj were well aware of Mansory USA, have intentionally ignored the potential for infringement. Additional bases demonstrating a likelihood of confusion between the parties' marks are expected to be revealed through discovery.

82.     Defendants 305 Auto and Mourtaj have utilized and continue to utilize the Infringing Marks in interstate commerce without Plaintiffs' permission, consent, license, or authorization.

83.     Defendants 305 Auto and Mourtaj are not, and never have been, associated, affiliated, connected with, licensed by and/or endorsed by Mansory USA or Mansory Germany.

84.     The acts of Defendants 305 Auto and Mourtaj complained of herein are in total disregard of Plaintiffs' rights and were commenced, and it is believed will continue, in spite of Defendants' 305 Auto and Mourtaj knowledge that its use of the Infringing Marks is in direct contravention of Plaintiffs' rights.

85.     Defendants 305 Auto and Mourtaj have enjoyed and continue to enjoy financial gain and profit from the marketing and sales/fees of the counterfeit goods and services that utilize the Infringing Marks.

86.     Plaintiffs have been damaged by Defendants' 305 Auto and Mourtaj acts of infringement and unfair competition.

87.     The acts of Defendants 305 Auto and Mourtaj have harmed or will harm Plaintiffs' reputation, have damaged or will damage Plaintiffs' goodwill, and have created (and will continue to create) the impression that Mansory USA is an infringer, when in fact the Defendants 305 Auto and Mourtaj are the infringers.

88.     Actual confusion and a false association is likely to occur, and Defendants' 305

Auto and Mourtaj aforesaid acts have caused and will continue to cause substantial and irreparable injury to Plaintiffs unless such acts are restrained by this Court.

89.     Unless this Court enters a permanent injunction in this case, the Defendants 305 Auto and Mourtaj may dispose of, or divert, counterfeit Mansory-branded goods being sold under the Infringing Marks and all evidence relating to the manufacture, importation, advertisement, and sale of the counterfeit Mansory-branded goods being sold under the Infringing Marks, and will disclaim any knowledge of the persons from whom they bought and to whom they sold such counterfeit Mansory-branded goods being sold under the Infringing Marks.

90.     Plaintiffs have no adequate remedy at law.

### The Unlawful Activities of Defendant Frimpone

91.     Upon information and belief, Defendant Frimpone is a purported "social media influencer" who runs an alleged e-commerce platform and so-called consultancy company called Prestige Knowledge, which supposedly teaches entrepreneurs how to "make money selling products online" by building, automating, and scaling online businesses using artificial intelligence ("AI") systems.

92.     Through his alleged e-commerce brands, Defendant Frimpone claims to have generated over $20 million in revenue.



93.     Defendant Frimpone frequently posts on social media platforms (including but not limited to TikTok, Instagram, and YouTube) various photos and videos depicting his "extravagant" lifestyle, enticing consumers with "click-to-enroll" or "comment/like-to-enroll" schemes designed to intentionally influence followers and induce them to subscribe to, and pay for, his purported e-commerce educational programs, classes, tutorials, and/or courses or services fees to manage their own "TikTok Shops."

94.     Since at least May 11, 2020, Defendant Frimpone has owned and operated a YouTube channel (@jesse-Frimpone), which promoted a video breaking down how he allegedly made $1 million in twenty-four hours using "AI Ghost Commerce," as shown below:



95.     Defendant Frimpone also owns and operates a public Instagram account (@kxngjess), which has 642,000 followers, as shown below:



96.     In order to entice consumers to sign-up for his programs, Defendant Frimpone advertises and promotes an extravagant lifestyle, suggesting to consumers that if they sign up for Frimpone's courses, they too can own a $500,000.00 "Lamborghini Mansory" (*i.e.* the Counterfeit MANSORY Urus), as shown in the image below:



97.     As reflected in one of the comments shown above, and after seeing Frimpone's post of the Counterfeit Mansory Urus, Instagram user "domo-mdk94" wrote: "I can't wait to own one oneday [sic] man if god blessed me with the opportunity to get my dream car."

98.     In connection with his advertising, offering for sale, and selling of his so-called services, Defendant Frimpone includes the Counterfeit Mansory Urus in countless social media posts that solicit "likes," comments, and followers, as shown below:





99.     On January 4, 2026, Defendant Frimpone offered Instagram users a "blueprint" if they commented "SITE" on a video in which he specifically referred to (and showed) the Counterfeit MANSORY Urus; that post (screenshots of which are provided below) obtained 23,300 "likes:"





100.    As shown above, in the comments of Defendant's Frimpone's video, an Instagram user questioned whether the Lamborghini Urus displayed in the background (*i.e.* the Counterfeit MANSORY Urus) is a "real Mansory or not."

101.    As detailed above, Defendant Frimpone purchased a Lamborghini Urus, and then conspired with Defendants 305 Auto and Mourtaj to modify it with counterfeit parts, including a body kit and exhaust system, that display the Infringing Marks (as defined above).



102.    Long subsequent to Plaintiffs' adoption and use of the MANSORY Marks in commerce, Defendant Frimpone began adopting and using in commerce the Infringing Marks, marks that are identical and confusingly similar to the MANSORY Marks, such that consumers are likely to confuse them.

103.    Long subsequent to Plaintiffs' adoption and use of the MANSORY Marks in commerce, Defendant Frimpone advertised and engaged in other commercial activity with the Infringing Marks, and/or is using and otherwise misappropriating the MANSORY Marks to (among other things) cause confusion.

104.    As detailed herein, Defendant Frimpone has advertised and used the Infringing Marks in connection with advertising, promoting, and selling e-commerce educational programs, classes, tutorials, and/or courses or services fees to manage "TikTok Shops."

105.    Despite knowing full well of Plaintiffs and the MANSORY Marks, Defendant Frimpone has willfully committed acts of infringement by, among things, directly targeting consumers using the Infringing Marks in online advertising.

106.    An image containing an example of Defendant Frimpone's unlawful use and infringement of the MANSORY Marks is shown below:



107.   This unlawful conduct and willful infringement was intentionally executed in an effort to misappropriate Plaintiffs' goodwill, customers, and market share.

108.   Defendant Frimpone knew that his willful and infringing conduct was unlawful.

109.   The acts of Defendant Frimpone have been willful, by virtue of at least: (a) his knowledge of Plaintiffs' rights in and to the MANSORY Marks; and (b) his refusal to cease-and-desist from the use of the Infringing Marks and other acts of infringement, as demonstrated by his disregard of Plaintiffs' demands.

110.   Defendant Frimpone's willful infringement and unlawful use of the Infringing Marks has continued in interstate commerce in the United States, including in the Southern District of Florida, in connection with automobiles that display the counterfeit and spurious Infringing Marks that are the subject of this action.

111.   Defendant Frimpone's willful infringement and unlawful use of the MANSORY Marks has allowed Defendant Frimpone to profit off of the goodwill and reputation associated with the Plaintiffs and the MANSORY Marks.

112.     Defendant Frimpone's willful infringement and unlawful use of the MANSORY Marks falsely represents or suggests to consumers that his Counterfeit MANSORY Urus originates from Plaintiffs (when it does not); that there is a connection between Plaintiffs and Defendant Frimpone (when there is not); that Defendant Frimpone is a client of Plaintiffs (when he is not); and that Defendant Frimpone obtained rights to the MANSORY Marks as a result of a license (which he has not). All of the foregoing unlawful practices will cause or have caused consumer confusion, and have violated or eroded Plaintiffs' exclusive rights to use the MANSORY Marks. Such use is likely to cause confusion, to cause mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Defendant Frimpone's goods and services and to cause them to falsely believe that said goods and services are sponsored, licensed, associated, authorized, or approved by Plaintiffs, all to the detriment of Plaintiffs, the trade, and the public.

113.     In addition to the immediate confusion and damage to the Plaintiffs stemming from Defendant Frimpone's willful infringement and unlawful use of the MANSORY Marks, further damage is caused even if consumers ultimately realize Defendant Frimpone is not affiliated with the Plaintiffs; by that time, consumers have already purchased Defendant Frimpone's goods and services that are being advertised with the Infringing Marks.

114.     The use by Defendant Frimpone of the MANSORY Marks in the manner described above tends to, and does, create the erroneous impression that inferior products emanate or originate from Mansory USA and/or Mansory Germany, and/or that said products/vehicles are authorized, sponsored, or approved by Mansory USA and/or Mansory Germany even though they are not.

115.     Consumer confusion is also likely to occur, if it has not already occurred, because the parties' advertising methods are either the same or highly similar, as Defendant Frimpone also

40

promote his goods and services bearing the Infringing Marks online.

116. The Infringing Marks are confusingly similar to the MANSORY Marks because, among other things: (a) the MANSORY Marks are strong, distinctive trademarks; (b) the Infringing Marks are identical to the MANSORY Marks, and the marks create the same overall impression, including with respect to the sound, appearance, and manner in which they are used; (c) the parties' sales channels, distribution, and customer bases are the same or highly similar; (d) the parties' advertising methods or channels are the same or highly similar, including because the parties use the same forums and media to advertise, leading to possible confusion; and (e) Defendant Frimpone intended to infringe on the MANSORY Marks, as Defendant Frimpone was well aware of Mansory USA, has intentionally ignored the potential for infringement. Additional bases demonstrating a likelihood of confusion between the parties' marks are expected to be revealed through discovery.

117. Defendant Frimpone has utilized and continue to utilize the Infringing Marks in interstate commerce without Plaintiffs' permission, consent, license, or authorization.

118. Defendant Frimpone is not, and never has been, associated, affiliated, connected with, licensed by and/or endorsed by Mansory USA or Mansory Germany.

119. The acts of Defendant Frimpone complained of herein are in total disregard of Plaintiffs' rights and were commenced, and it is believed will continue, in spite of Defendant Frimpone's knowledge that his use of the Infringing Marks is in direct contravention of Plaintiffs' rights.

120. Defendant Frimpone has enjoyed and continue to enjoy financial gain and profit from the marketing, advertising, and promotion of goods and services with the Infringing Marks.

121. Plaintiffs have been damaged by Defendant Frimpone's acts of infringement and

unfair competition.

122.     The acts of Defendant Frimpone have harmed or will harm Plaintiffs' reputation, have damaged or will damage Plaintiffs' goodwill, and have created (and will continue to create) the impression that Mansory USA is an infringer, when in fact Defendant Frimpone is the infringer.

<u>The Supercar Saturdays Florida Event</u>

123.     On May 9, 2026, the Seminole Hard Rock Hotel & Casino hosted an event called the Supercars Saturdays Florida ("SSF"), which is a monthly gathering of exotics, supercars, hypercars, and classic, attended by those vehicles' owners, as well as auto enthusiasts and patrons.

124.     Defendant Frimpone attended the SSF event, during which he publicly displayed— among several *authentic* Mansory vehicles facilitated by Mansory USA — the Counterfeit MANSORY Urus.



125.     Patrons viewed Defendant Frimpone's Counterfeit MANSORY Urus, and actual confusion occurred, as viewers believed that the subject vehicle was an *authentic* MANSORY (when it is not); for example, one individual (referring to Frimpone's counterfeit vehicle) stated "Yeah this is beautiful," whereas another individual stated that (Frimpone's counterfeit vehicle) "might be the craziest Urus:"




126. Additional instances of actual confusion and a false association are likely to occur, and Defendant Frimpone's aforesaid acts have caused and will continue to cause substantial and irreparable injury to Plaintiffs unless such acts are restrained by this Court.

127. Unless this Court enters a permanent injunction in this case, Defendant Frimpone may dispose of, or divert, counterfeit Mansory-branded goods with the Infringing Marks and all evidence relating to the purchase, manufacture, importation, advertisement, and installation of the counterfeit Mansory-branded goods with the Infringing Marks, and will disclaim any knowledge of the persons from whom he bought and to whom he worked with to modify such counterfeit Mansory-branded goods with the Infringing Marks.

128. Plaintiffs have no adequate remedy at law.

**COUNT I**
**FEDERAL TRADEMARK INFRINGEMENT**
**[15 U.S.C. § 1114]**

**(Mansory Germany Against Defendants 305 Auto and Mourtaj)**

129. Mansory Germany adopts and incorporates each and every allegation set forth in of Paragraphs 1 through 128 as if fully set forth herein.

130. With full knowledge and awareness of Mansory Germany's ownership and prior use of the MANSORY Marks, the Defendants 305 Auto and Mourtaj have willfully used and continue to use the Infringing Marks in commerce, on or in connection with goods and services in

a manner that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive.

131.    The acts of the Defendants 305 Auto and Mourtaj constitute infringement and use of a confusingly similar marks which are identical with or substantially indistinguishable from the MANSORY Marks, in violation of and pursuant to 15 U.S.C. §1114.

132.    The acts of the Defendants 305 Auto and Mourtaj have harmed or will harm Mansory Germany's reputation, have damaged or will damage Mansory Germany's goodwill, and upon information and belief, will create the impression that Mansory Germany is an infringer when in fact the Defendants 305 Auto and Mourtaj are the infringers.

133.    The aforesaid acts of the Defendants 305 Auto and Mourtaj have caused and will cause great and irreparable injury to Mansory Germany, and unless said acts are restrained by this Court, they will be continued and Mansory Germany will continue to suffer great and irreparable injury.

134.    Mansory Germany has no adequate remedy at law.

WHEREFORE, Mansory Germany prays that the Court grant the Prayer for Relief set forth below.

### COUNT II
### FEDERAL FALSE DESIGNATION OF ORIGIN
### AND UNFAIR COMPETITION
### [15 U.S.C. §1125(a)]

**(Plaintiffs Against Defendants 305 Auto and Mourtaj)**

135.     Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

136.    The intentional and unlawful use in commerce of the Infringing Marks by the Defendants 305 Auto and Mourtaj constitutes use in commerce of a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description,

and false or misleading representation that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendants 305 Auto and Mourtaj with Plaintiffs, or as to origin, sponsorship or approval of Defendants' 305 Auto and Mourtaj goods, services, or commercial activities by Plaintiffs, or to cause reverse confusion thereof.

137.   The aforesaid acts and use of the Infringing Marks by the Defendants 305 Auto and Mourtaj constitute unfair competition and false designation, and/or false description of origin in violation of §43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

138.   The aforesaid acts of the Defendants 305 Auto and Mourtaj have caused and will cause great and irreparable injury to Plaintiffs, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

139.   Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that the Court grant the Prayer for Relief set forth below.

### COUNT III
### TRADEMARK INFRINGEMENT
### UNDER FLORIDA COMMON LAW

**(Plaintiffs Against Defendants 305 Auto and Mourtaj)**

140.   Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

141.   Plaintiffs own and enjoy common law trademark rights in the MANSORY Marks in Florida in conjunction with use on goods and services, which rights are superior to any rights that Defendants 305 Auto and Mourtaj may claim in and to said trademarks.

142.   Defendants 305 Auto and Mourtaj have used, in connection with the sale of goods and services, terms or names that are false and misleading and likely to cause confusion or cause

45

mistake or deception as to the affiliation, connection or association of Defendants 305 Auto and Mourtaj with Mansory Germany as to the origin, sponsorship or approval of goods, services, or commercial activities in violation of common law.

143.     The sale by Defendants 305 Auto and Mourtaj of goods and services bearing the Infringing Marks in the State of Florida is likely to cause confusion as to the source of the goods and services in that purchasers thereof will be likely to associate or have associated such goods and services as originating from the Plaintiffs, all to the detriment of the Plaintiffs.

144.     The acts of Defendants 305 Auto and Mourtaj have harmed or will harm Plaintiffs' reputation, have damaged or will damage Plaintiffs and the underlying goodwill of the MANSORY brand, and have created or will create the impression that Plaintiffs are infringers when in fact the Defendants 305 Auto and Mourtaj are the infringers.

145.     The aforesaid acts of Defendants 305 Auto and Mourtaj have caused and will continue to cause great and irreparable injury to the Plaintiffs, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

146.     The aforesaid acts of Defendants 305 Auto and Mourtaj constitute infringement, unfair competition, misappropriation, and misuse of the MANSORY Marks, all in violation of Plaintiffs' rights at common law and under the law of the State of Florida.

147.     Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that the Court grants the Prayer for Relief set forth below.

**COUNT IV**
**UNFAIR COMPETITION**
**UNDER FLORIDA COMMON LAW**

**(Plaintiffs Against Defendants 305 Auto and Mourtaj)**

148.    Plaintiffs incorporates herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

149.    Mansory Germany (and its licensee) first adopted and used the MANSORY Marks in markets or trade areas, as a means of establishing goodwill and reputation and to identify particular goods and services rendered or offered by Plaintiffs and to distinguish them from similar goods and services rendered or offered by others.

150.    Through its association with such goods and services, the MANSORY Marks have, by actual usage, served to identify Mansory Germany (and its licensee) as the source of the goods and services.

151.    Defendants 305 Auto and Mourtaj have commenced the use of identical or confusingly similar trademarks, to identify goods and services rendered by them in the same trade areas in which Plaintiffs have already established the MANSORY Marks.

152.    As a consequence of the Defendants' 305 Auto and Mourtaj actions, customer confusion of source or as to the sponsorship of the goods and services offered by Defendants 305 Auto and Mourtaj is likely.

153.    The aforesaid acts of Defendants 305 Auto and Mourtaj constitute infringement, unfair competition, misappropriation, and misuse of the MANSORY Marks, all in violation of Plaintiffs' rights at common law and under the law of the State of Florida.

154.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that the Court grant the Prayer for Relief set forth below.

## COUNT  V
## TRADEMARK COUNTERFEITING
## [15 U.S.C. § 1114]

**(Mansory Germany Against Defendants 305 Auto and Mourtaj)**

47

155. Mansory Germany incorporates herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

156. Mansory Germany is the owner of the MANSORY Marks.

157. The MANSORY Marks are valid, distinctive, and widely recognized in the United States.

158. Defendants 305 Auto and Mourtaj are not authorized distributors or retailers of Mansory Germany, nor do Defendants 305 Auto and Mourtaj have a license to use the MANSORY Marks.

159. Defendants 305 Auto and Mourtaj, without authorization, knowingly and intentionally imported, acquired, obtained, trafficked in, advertised, offered for sale, and/or sold counterfeit imitations of Plaintiffs' goods and services under the MANSORY Marks in interstate commerce, and have advertised same online (including on Instagram).

160. Defendants' 305 Auto and Mourtaj actions were undertaken willfully and with the intent to trade on the goodwill of Mansory Germany's MANSORY Marks, and to deceive consumers into believing that Defendants' goods and services are genuine Mansory goods and services.

161. The willful actions of Defendants 305 Auto and Mourtaj have caused, are causing, and are likely to continue to cause confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of counterfeits of Mansory-branded goods.

162. As a direct and proximate result of unlawful Defendants' 305 Auto and Mourtaj conduct, Mansory Germany has suffered and continues to suffer irreparable harm to the value, reputation, and goodwill of its MANSORY Marks, and is likely to continue to suffer unless

48

Defendant 305 Auto and Mourtaj are enjoined.

163. Defendants' 305 Auto and Mourtaj unlawful actions constitute counterfeiting of the MANSORY Marks in violation of Mansory Germany's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

164. Mansory Germany has no adequate remedy at law.

WHEREFORE, Mansory Germany prays that the Court grant the Prayer for Relief set forth below.

## COUNT VI
## TRADEMARK DILUTION
## [15 U.S.C. § 1125(c)]

**(Mansory Germany Against Defendants 305 Auto and Mourtaj)**

165. Mansory Germany incorporates herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

166. Mansory Germany is the owner of the MANSORY Marks, which have become famous and distinctive worldwide, including through Mansory Germany's continuous and exclusive use in interstate commerce of the MANSORY Marks in connection with vehicle body kits, parts, and other products and services.

167. Mansory Germany's MANSORY Marks are widely recognized by consumers as a designation of source for Mansory Germany's goods and services and became famous prior to Defendants' 305 Auto and Mourtaj conduct alleged herein.

168. Defendants 305 Auto and Mourtaj, without authorization, used in commerce the Infringing Marks in connection with vehicle body kits, parts, and other products and services.

169. Defendants' 305 Auto and Mourtaj use of the Infringing Marks began after the MANSORY Marks became famous.

49

170. Defendants' 305 Auto and Mourtaj use of the Infringing Marks creates an association in the minds of consumers between Defendants' 305 Auto and Mourtaj goods and services and Mansory Germany's famous MANSORY Marks.

171. Defendants' 305 Auto and Mourtaj use of the Infringing Marks is likely to impair the distinctiveness of the MANSORY Marks by weakening the ability to identify and distinguish Mansory Germany's goods and services as originating from a single source.

172. The actions of Defendants 305 Auto and Mourtaj as described above have diluted the reputation and value of Mansory Germany's famous MANSORY Marks through their false and misleading advertising and counterfeiting of the MANSORY Marks and goods and services associated therewith.

173. Defendants' 305 Auto and Mourtaj conduct was willfully intended to tarnish the reputation and value of Mansory Germany's famous MANSORY Marks and to dilute the MANSORY Marks by blurring their distinctiveness.

174. As a direct and proximate result of Defendants' 305 Auto and Mourtaj unlawful actions, Mansory Germany has suffered and will continue to suffer irreparable harm unless enjoined by the Court.

175. Mansory Germany has no adequate remedy at law.

WHEREFORE, Mansory Germany prays that the Court grant the Prayer for Relief set forth below.

<u>**COUNT VII**</u>
<u>**FEDERAL TRADEMARK INFRINGEMENT**</u>
<u>**[15 U.S.C. § 1114]**</u>

**(Mansory Germany Against Defendant Frimpone)**

176. Mansory Germany adopts and incorporates each and every allegation set forth in of

Paragraphs 1 through 128 as if fully set forth herein.

177.    With full knowledge and awareness of Mansory Germany's ownership and prior use of the MANSORY Marks, Defendant Frimpone has willfully used and continue to use the Infringing Marks in commerce, on or in connection with goods and services in a manner that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive.

178.    The acts of Defendant Frimpone constitute infringement and use of a confusingly similar marks which are identical with or substantially indistinguishable from the MANSORY Marks, in violation of and pursuant to 15 U.S.C. §1114.

179.    The acts of Defendant Frimpone have harmed or will harm Mansory Germany's reputation, have damaged or will damage Mansory Germany's goodwill, and upon information and belief, will create the impression that Mansory Germany is an infringer when in fact the Defendant Frimpone is the infringer.

180.    The aforesaid acts of Defendant Frimpone have caused and will cause great and irreparable injury to Mansory Germany, and unless said acts are restrained by this Court, they will be continued and Mansory Germany will continue to suffer great and irreparable injury.

181.    Mansory Germany has no adequate remedy at law.

WHEREFORE, Mansory Germany prays that the Court grant the Prayer for Relief set forth below.

## COUNT VIII
## FEDERAL FALSE DESIGNATION OF ORIGIN
## AND UNFAIR COMPETITION
## [15 U.S.C. §1125(a)]

**(Plaintiffs Against Defendant Frimpone)**

182.     Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

51

183. The intentional and unlawful use in commerce of the Infringing Marks by Defendant Frimpone constitutes use in commerce of a word, term, name, symbol, or device, or a combination thereof, or a false designation of origin, false or misleading description, and false or misleading representation that is likely to cause confusion, reverse confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of Defendant Frimpone with Plaintiffs, or as to origin, sponsorship or approval of Defendant Frimpone's goods, services, or commercial activities by Plaintiffs, or to cause reverse confusion thereof.

184. The aforesaid acts and use of the Infringing Marks by Defendant Frimpone constitutes unfair competition and false designation, and/or false description of origin in violation of §43(a)(1)(A) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

185. The aforesaid acts of Defendant Frimpone have caused and will cause great and irreparable injury to Plaintiffs, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

186. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that the Court grant the Prayer for Relief set forth below.

## COUNT IX
## TRADEMARK INFRINGEMENT
## UNDER FLORIDA COMMON LAW

### (Plaintiffs Against Defendant Frimpone)

187. Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

188. Plaintiffs own and enjoy common law trademark rights in the MANSORY Marks in Florida in conjunction with use on goods and services, which rights are superior to any rights that Defendant Frimpone may claim in and to said trademarks.

189.     Defendant Frimpone has used, in connection with the sale of goods and services, terms or names that are false and misleading and likely to cause confusion or cause mistake or deception as to the affiliation, connection or association of Defendant Frimpone with Mansory Germany as to the origin, sponsorship or approval of goods, services, or commercial activities in violation of common law.

190.     Defendant Frimpone's use of the Infringing Marks in connection with commercial activities in the State of Florida is likely to cause confusion as to the source of the goods and services in that purchasers thereof will be likely to associate or have associated such goods and services as originating from the Plaintiffs, all to the detriment of the Plaintiffs.

191.     The acts of Defendant Frimpone have harmed or will harm Plaintiffs' reputation, have damaged or will damage Plaintiffs and the underlying goodwill of the MANSORY brand, and have created or will create the impression that Plaintiffs are infringers when in fact the Defendant Frimpone is the infringer.

192.     The aforesaid acts of Defendant Frimpone have caused and will continue to cause great and irreparable injury to the Plaintiffs, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

193.     The aforesaid acts of Defendant Frimpone constitute infringement, unfair competition, misappropriation, and misuse of the MANSORY Marks, all in violation of Plaintiffs' rights at common law and under the law of the State of Florida.

194.     Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that the Court grants the Prayer for Relief set forth below.

**COUNT X**
**UNFAIR COMPETITION**
**UNDER FLORIDA COMMON LAW**

53

**(Plaintiffs Against Defendant Frimpone)**

195.    Plaintiffs incorporates herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

196.    Mansory Germany (and its licensee) first adopted and used the MANSORY Marks in markets or trade areas, as a means of establishing goodwill and reputation and to identify particular goods and services rendered or offered by Plaintiffs and to distinguish them from similar goods and services rendered or offered by others.

197.    Through its association with such goods and services, the MANSORY Marks have, by actual usage, served to identify Mansory Germany (and its licensee) as the source of the goods and services.

198.    Defendant Frimpone has commenced the use of identical or confusingly similar trademarks to the MANSORY Marks by using those marks to engage in commercial activities.

199.    As a consequence of Defendant Frimpone's actions, customer confusion of source or as to the sponsorship of the goods and services offered by Defendant Frimpone is likely.

200.    The aforesaid acts of Defendant Frimpone constitute infringement, unfair competition, misappropriation, and misuse of the MANSORY Marks, all in violation of Plaintiffs' rights at common law and under the law of the State of Florida.

201.    Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that the Court grant the Prayer for Relief set forth below.

## COUNT XI
## TRADEMARK COUNTERFEITING
## [15 U.S.C. § 1114]

**(Mansory Germany Against Defendant Frimpone)**

202.    Mansory Germany incorporates herein each and every allegation set forth in

54

Paragraphs 1 through 128 as if fully set forth herein.

203.    Mansory Germany is the owner of the MANSORY Marks.

204.    The MANSORY Marks are valid, distinctive, and widely recognized in the United States.

205.    Defendant Frimpone is not an authorized sponsor or distributor of Mansory Germany, nor does Defendant Frimpone have a license to use the MANSORY Marks.

206.    Defendant Frimpone engaged in commercial activity in connection with the Counterfeit MANSORY Urus, including but not limited to knowingly and intentionally soliciting, acquiring, purchasing, importing (or causing to be imported) imitation and/or counterfeit "Mansory" parts/body kits/accessories from overseas, and otherwise trafficking in counterfeit goods.

207.    Defendant Frimpone, without authorization, also knowingly and intentionally advertised, in connection with the sale of goods and/or services, an imitation vehicle that is comprised of parts containing the Infringing Marks, and which violate Plaintiffs' rights in their goods and services under the MANSORY Marks in interstate commerce.

208.    Defendant Frimpone's actions were undertaken willfully and with the intent to trade on the goodwill of Mansory Germany's MANSORY Marks, and to deceive consumers into believing that Defendant Frimpone's Counterfeit MANSORY Urus is a genuine Mansory Lamborghini Urus offered by Mansory Germany.

209.    The willful actions of Defendant Frimpone have caused, are causing, and are likely to continue to cause confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of counterfeits of Mansory-branded goods.

210.    As a direct and proximate result of unlawful Defendant Frimpone's conduct,

55

Mansory Germany has suffered and continues to suffer irreparable harm to the value, reputation, and goodwill of its MANSORY Marks, and is likely to continue to suffer unless Defendant Frimpone is enjoined.

211. Defendant Frimpone's unlawful actions constitute counterfeiting of the MANSORY Marks in violation of Mansory Germany's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

212. Mansory Germany has no adequate remedy at law.

WHEREFORE, Mansory Germany prays that the Court grant the Prayer for Relief set forth below.

**COUNT XII**
**TRADEMARK DILUTION**
**[15 U.S.C. § 1125(c)]**

**(Mansory Germany Against Defendant Frimpone)**

213. Mansory Germany incorporates herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

214. Mansory Germany is the owner of the MANSORY Marks, which have become famous and distinctive worldwide, including through Mansory Germany's continuous and exclusive use in interstate commerce of the MANSORY Marks in connection with vehicle body kits, parts, and other products and services.

215. Mansory Germany's MANSORY Marks are widely recognized by consumers as a designation of source for Mansory Germany's goods and services and became famous prior to Defendant Frimpone's conduct alleged herein.

216. Defendant Frimpone, without authorization, used in commerce the Infringing Marks in connection with commercial activity, including but not limited to, the sale or offering for

sale of e-commerce educational programs, classes, tutorials, and/or courses or services fees.

217. Defendant Frimpone's use of the Infringing Marks began after the MANSORY Marks became famous.

218. Defendant Frimpone's use of the Infringing Marks creates an association in the minds of consumers between Defendant Frimpone's goods and services and Mansory Germany's famous MANSORY Marks.

219. Defendant Frimpone's use of the Infringing Marks is likely to impair the distinctiveness of the MANSORY Marks by weakening the ability to identify and distinguish Mansory Germany's goods and services as originating from a single source.

220. The actions of Defendant Frimpone as described above have diluted the reputation and value of Mansory Germany's famous MANSORY Marks through his false and misleading advertising and counterfeiting of the MANSORY Marks and goods and services associated therewith.

221. Defendant Frimpone's conduct was willfully intended to tarnish the reputation and value of Mansory Germany's famous MANSORY Marks and to dilute the MANSORY Marks by blurring their distinctiveness.

222. As a direct and proximate result of Defendant Frimpone's unlawful actions, Mansory Germany has suffered and will continue to suffer irreparable harm unless enjoined by the Court.

223. Mansory Germany has no adequate remedy at law.

WHEREFORE, Mansory Germany prays that the Court grant the Prayer for Relief set forth below.

## COUNT XIII
## VIOLATION OF FLORIDA DECEPTIVE

**AND UNFAIR TRADE PRACTICES ACT**
**[Sections 501.201-501.213, Florida Statutes]**

**(Plaintiffs Against All Defendants)**

224. Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

225. The Florida Deceptive and Unfair Trademark Practices Act ("FDUTPA") is designed to protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of trade or commerce.

226. Plaintiffs are each an "interested party or person" as defined in §501.203, Florida Statutes, because they have each been affected by Defendants' violation of FDUTPA.

227. Defendants have continuously engaged in unfair and deceptive acts by the misconduct alleged throughout this Complaint, including but not limited to misrepresenting the authenticity of goods and services with the Infringing Marks.

228. Defendants have been and continue to advertise to the public in interstate commerce goods and services with the Infringing Marks.

229. The unlawful and unauthorized activities of Defendants have allowed them to compete with Plaintiffs unfairly and deceptively by misrepresenting their affiliation with Plaintiffs and the genuineness of goods and services with the Infringing Marks to redirect sales away from Plaintiffs and/or financially enrich Defendants.

230. Defendants willfully undertook these unlawful acts and knew or should have known that such practices were unlawful.

231. Plaintiffs have been damaged by Defendants' unlawful actions in an amount exceeding $75,000.00, and Defendants' actions will, unless restrained, further impair, if not

destroy, the value of the MANSORY Marks and the associated goodwill.

232. Plaintiffs have suffered, and will continue to suffer irreparable harm if Defendants' actions as set forth in this Count are allowed to continue, including but not limited to actual damages, as well as loss of opportunity of obtaining and/or retaining valuable business relationships, loss of profits, loss of reputation, and loss of goodwill.

233. Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs pray that the Court grant the Prayer for Relief set forth below.

## COUNT XIV
## FEDERAL FALSE ADVERTISING
## [15 U.S.C. §1125(a)(1)]

### (Plaintiffs Against All Defendants)

234. Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

235. As alleged throughout this Complaint, Defendants have made, and continue to make, false or misleading representations of fact in commerce concerning the nature, characteristics, qualities, origin, and exclusivity of their goods and services.

236. Defendants have made such false statements and misrepresentations of fact in marketing and promotional materials, including on their social media pages, in trade communications, and in discussions with third-parties with the intent of discrediting Plaintiffs' reputation, goods, and services, and with the intent of deterring third parties from doing business with Plaintiffs.

237. Defendants' false or misleading statements were material, in that they would likely influence a consumer's purchasing decision, as consumers are likely to view (and be influenced by) the Defendants' online advertising and promotional materials, written and verbal

59

reviews/comments, and other channels.

238.     Defendants' false or misleading statements constitute false advertising by misrepresenting the nature, characteristics, qualities, origin, and exclusivity of Defendants' goods and services, all in violation of 15 U.S.C. § 1125(a)(1).

239.     Defendants' statements are likely to deceive, and have deceived numerous third parties – including consumers – about the nature, characteristics, qualities, origin, and exclusivity of Defendants' goods and services, causing competitive and reputational harm to Plaintiff.

240.     Plaintiffs have been damaged by the reliance of consumers upon Defendants' false and misleading statements.

241.     Defendants have reaped unjustified revenues, social media followings, and other value, and have been unjustly enriched by the false misrepresentations.

242.     Plaintiffs have suffered actual damages and irreparable harm, including lost customers, business opportunities, customer confusion, loss of good will, reputational damage, and legal costs arising from Defendants' false and misleading representations.

243.     Defendants' acts have caused, and will continue to cause, Plaintiffs irreparable harm for which they have no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief.

WHEREFORE, Plaintiffs request that the Court grant the relief requested in the Prayer for Relief below.

### COUNT XV
### FALSE ADVERTISING
### Florida Statute 817.41

**(Plaintiffs Against All Defendants)**

244.     Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1

through 128 as if fully set forth herein.

245.    Fla. Stat. §817.41(1) provides that:

> [i]t shall be unlawful for any person to make or disseminate or cause to be made or disseminated before the general public of the state, or any portion thereof, any misleading advertisement. Such making or dissemination of misleading advertising shall constitute and is hereby declared to be fraudulent and unlawful, designed and intended for obtaining money or property under false pretenses.

246.    Defendants have made or disseminated, and continue to make or disseminate misleading advertisements, including those alleged throughout this Complaint.

247.    Defendants made one or more material misrepresentations of facts, and knew or should have known of the falsity of the statements.

248.    Defendants intended that the representations would induce another to rely and act on it.

249.    As a consequence of Defendants' false and/or misleading advertising, Defendants have unlawfully induced consumers who justifiably relied on the false advertisements in connection with their purchasing decisions, and Defendants have in turn diverted sales from Plaintiff, and caused other reputational harm and damage to the Plaintiffs.

250.    The aforesaid acts of the Defendants have harmed or will harm Plaintiffs.

251.    Defendants' misconduct has misled and injured consumers, and is likely to continue to mislead and injure consumers that are relying on the Defendants' advertisements, and have affected and will continue to affect those consumers' purchasing decisions or other conduct.

252.    The underlying misconduct has also injured the Defendants' clients, as those clients have a right to be free from false and/or misleading misrepresentations in connection with their purchasing decisions.

253. Defendants' aforesaid acts constitute false advertising in violation of Florida law.

254. The aforesaid acts of the Defendants have caused and will cause great and irreparable injury to Plaintiffs, and unless said acts are restrained by this Court, they will be continued and Plaintiffs will continue to suffer great and irreparable injury.

255. Plaintiffs have no adequate remedy at law unless the Court enjoins Defendants' false and misleading advertising.

WHEREFORE, Plaintiffs request that the Court grant the relief requested in the Prayer for Relief below.

## COUNT XVI
## CIVIL CONSPIRACY

### (Plaintiffs Against All Defendants)

256. Plaintiffs incorporate herein each and every allegation set forth in Paragraphs 1 through 128 as if fully set forth herein.

257. This is an action for civil conspiracy against the Defendants, where the underlying wrong is not only the unlawful action of trademark infringement, but also counterfeiting.

258. In late 2025, all Defendants to this action conspired and agreed, expressly and/or tacitly, to a "Mansory conversion" of Defendant Frimpone's Lamborghini Urus, whereby counterfeit "Mansory" kits, parts, and accessories would be installed (all with the intent to infringe the MANSORY Marks). This constituted the initial formation and beginning operations of the conspiracy, followed by the wrongful conduct in furtherance of the conspiracy alleged herein, and also set forth immediately below.

259. As part of and in furtherance of this conspiratorial scheme, and with knowledge of the Plaintiffs and the MANSORY Marks, Defendants all committed numerous over acts in connection with Defendant Frimpone's Lamborghini Urus.

62

260. Defendants each unlawfully used the MANSORY Marks in various social media posts, including cross-promotional posts "tagging" each other, many of which are captured by screenshots within this Complaint, which intentionally included the MANSORY Marks in caption text, hashtags, photos, and, most importantly, on counterfeit parts of Defendant Frimpone's Lamborghini Urus.

261. These social media posts included the MANSORY Marks, as well as deceptive language that has and continues to lure and otherwise misled consumers, such that when consumers search "mansory" on Instagram, consumers are (a) directed to Defendants' posts and accounts (through which Defendants 305 Auto and Mourtaj market, advertise, offer for sale, and sell directly competing goods and services), and (b) encouraged to purchase Defendants' respective goods and services (which, for Defendants 305 Auto and Mourtaj, include customization and installation of vehicles with counterfeit "Mansory" body kits and parts).

262. As part of and in furtherance of this conspiratorial scheme, Defendant Frimpone committed the overt acts of (a) soliciting, acquiring, importing (or causing to be imported), purchasing, and otherwise trafficking in inauthentic "Mansory" kits, parts, and accessories; (b) paying monies to Defendants 305 Auto and Mourtaj for the installation of those counterfeit "Mansory" parts onto a Lamborghini Urus; and (c) advertising and promoting *not only his own* goods and services (*e.g.* his e-commerce platforms and tutorials) using the Infringing Marks, *but also* advertising and promoting those services of Defendants 305 Auto and Mourtaj (so as to increase traffic and revenue at 305 Auto's business).

263. As part of and in furtherance of this conspiratorial scheme, Defendants 305 Auto and Mourtaj committed the overt acts of (a) trafficking in the counterfeit "Mansory" kits, parts, and accessories, including the importation and installations of those kits, parts, and accessories on

the subject Lamborghini Urus; (b) soliciting and receiving monies from their client (*i.e.*, Frimpone) for the installation of counterfeit "Mansory" kits, parts, and accessories onto the subject Lamborghini Urus.

264.    Defendants also mutually benefited from the agreed-upon conspiratorial scheme, as all Defendants received increased consumer engagement through additional views, "likes," and comments on social media, including posts, "reels," and stories referencing a "Lamborghini Urus Mansory Conversion," creating increased marketplace presence and unfair/unlawful competitive advantage.  For their parts, Defendants 305 Auto and Mourtaj also enjoyed increased revenue, viewership, and traffic to their business.

265.    As an example, the following screenshot of a "reel" posted on Defendants 305 Auto and Mourtaj's Instagram accounts dated November 11, 2025—which shows Defendant Mourtaj revealing the "beginning stages" of the "conversion" and "swap" of Defendant Frimpone's Lamborghini Urus—has 4,340 views:



266.    Additionally, the following screenshot of another "reel" posted on Defendants 305 Auto and Mourtaj's Instagram accounts dated December 30, 2025—which shows Defendant Mourtaj revealing to Defendant Frimpone a "converted" Lamborghini Urus—has 6,929 views:



267.    Defendants all profited and benefited from the agreed-upon conspiratorial scheme.

268.    Defendants acted with full knowledge of this civil conspiracy.

269.    By engaging in the aforesaid acts, the conspiring Defendants in this cause of action engaged in willful trademark infringement, as well as counterfeiting, and engaged in the foregoing unlawful acts using improper means or methods, and/or lawful acts by unlawful means.

270.     Plaintiff has been damaged as a result of the named Defendants' acts done under the conspiracy, as well as their underlying trademark infringement and unfair competition.

WHEREFORE, Plaintiffs request that the Court grant the relief requested in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**,  Plaintiffs  pray:

A.    That this Court will adjudge that the MANSORY Marks have been infringed, as a direct and proximate result of the willful acts of the Defendants as set forth in this Complaint, including Defendants' use of the Infringing Marks, in violation of Plaintiffs' rights under the

Lanham Act, 15 U.S.C. §1051 et seq., Fla. Stat. §495.161, and the common law of the State of Florida.

B.      That this Court will adjudge that the Defendants have competed unfairly with the Plaintiffs in violation of common law and in violation of the Plaintiffs' rights under the Lanham Act, 15 U.S.C. §1125(a).

C.      That the Defendants, and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, be permanently enjoined and restrained:

i.      From using or licensing the MANSORY Marks, the Infringing Marks, or any reproduction, infringement, copy or colorable imitation and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, in connection with the distribution, marketing, advertising or sale of any unauthorized goods and services;

ii.     From using, applying to register, or registering any logo, trade name, or trademark which may be calculated to falsely represent or which has the effect of falsely representing that the unauthorized goods and services of the Defendants, or of any third parties, are sponsored by, authorized by, or in any way associated with Plaintiffs and/or that the goods and services of Plaintiffs are inferior to, copies of, infringing of or imitations of the goods and services of the Defendants;

iii.    From providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the MANSORY Marks;

iv.     From infringing counterfeiting, or diluting one of more of the MANSORY Marks;

v.      From otherwise unfairly competing with Mansory Germany;

vi.     From doing any other act or thing likely to cause the public or the trade to believe that there is any connection between the Defendants and Plaintiffs, or their respective goods and services or commercial activities;

66

vii. From falsely representing itself as being connected with Mansory Germany, or sponsored by or associated with Mansory Germany, or engaging in any act which is likely to falsely cause the trade and/or members of the purchasing public to believe that the Defendants or their affiliates are associated with Mansory Germany and/or that Mansory Germany is associated with Defendants; and

viii. From affixing, applying, annexing, or using in connection with the sale of any goods or services sold by the Defendants, a false description or representation including words or other symbols tending to falsely describe or represent such goods or services.

D. That the Defendants be required to recall and deliver up for destruction all goods, kits, parts, accessories, labels, signs, prints, packages, inventory, advertisements, internet advertising and other written or printed material in its possession or control, or third party advertisers of Defendants' goods and services which bear the MANSORY Marks or any infringement thereof, including but not limited to the Infringing Marks, and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademark similar thereto or likely to be confused therewith, alone or in combination with any other word or element.

E. That the Defendants be directed to file with this Court and to serve upon Plaintiffs within thirty days after service of the injunction issued in this action, a written report under oath, setting forth in detail the manner of compliance with the paragraphs above, including all subparts.

F. That Plaintiffs have and recover Defendants' profits and the other damages arising from Defendants' acts of trademark infringement, counterfeiting, false advertising, civil conspiracy, and unfair competition, and that the Court, pursuant to §35 of the Lanham Act, enter judgment, and that said sum be trebled as authorized pursuant to 15 U.S.C. §1117(a).

G. That the Court award statutory damages pursuant to 15 U.S.C. § 1114 based upon the trademark counterfeiting claim set forth herein, including damages in the amount of

$2,000,000.00 per mark based upon the Defendants' willful infringement.

H.      That Plaintiffs have and recover such sums as are necessary to place or compensate for corrective advertising.

I.      That Plaintiffs have and recover nominal damages.

J.      That Plaintiffs have and recover punitive damages, pursuant to the laws of the State of Florida, and common law, in addition to actual damages and/or nominal damages.

K.      That Plaintiffs have and recover both pre-judgment and post-judgment interest on each and every damage award.

L.      That Plaintiffs be entitled to injunctive relief as set forth in §34 of the Lanham Act, 15 U.S.C. § 1116.

M.      That Plaintiffs have and recover the remedies set forth in §35 of the Lanham Act, 15 U.S.C. §§1117.

N.      That Plaintiffs have and recover the remedies set forth in §36 of the Lanham Act, 15 U.S.C. §§1118.

O.      That the Court award an accounting of Defendants' profits from the sale and/or fees generated in connection with the goods and services sold, used, transacted, or purchased under or in connection with the Infringing Marks through trial or final adjudication.

P.      That Plaintiffs have and recover their reasonable attorney's fees incurred in this action, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, the Florida Deceptive and Unfair Trade Practices Act, and as otherwise authorized.

Q.      That Plaintiffs have and recover their taxable costs and disbursements herein, pursuant to §35 of the Lanham Act, 15 U.S.C. §1117, and as otherwise authorized.

R.      That Plaintiffs have and recover such further relief as the Court may deem just and

proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury as to all issues triable of right by a jury.

Dated:  May 18, 2026

Respectfully submitted,

Cleo I. Suero
Jonathan Woodard
Florida Bar No. 0096553
jwoodard@malloylaw.com
Oliver Alan Ruiz
Florida Bar No. 524,786
oruiz@malloylaw.com
Cleo Suero
Florida Bar No. 1024675
csuero@malloylaw.com
**MALLOY & MALLOY, P.L**.
2800 S.W. Third Avenue
Miami, Florida 33129
Telephone (305) 858-8000
*Attorneys for Plaintiffs*